UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRED NEKOUEE, individually,   :
            :
    Plaintiff,    :
            :
vs.          : Case No. 4:18-cv-02159
            :
SOUTHPOINT PLAZA, L.L.C., a Missouri :
limited liability company;   :
            :
DOLLAR TREE STORES, INC., a Virginia :
corporation;      :
            :
and         :
            :
BIG LOTS STORES, INC., an Ohio  :
corporation;      :
            :
    Defendants.   :
_____

## **COMPLAINT**
(Injunctive Relief Demanded)

   PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendants, SOUTHPOINT PLAZA, L.L.C., a Missouri limited liability company; DOLLAR TREE STORES, INC., a Virginia corporation; and BIG LOTS STORES, INC., an Ohio corporation (sometimes referred to as "Defendants"), for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

   1.  Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

   2.  Defendant Southpoint Plaza, L.L.C.'s property, the Southpoint Shopping Center, is

located at 4411-4491 Lemay Ferry Road, St. Louis, Missouri 63129, in the County of St. Louis ("Southpoint Shopping Center").

3.     Defendant Dollar Tree Stores, Inc. store at 4411 Lemay Ferry Road, St. Louis, Missouri 63129, is located in the Southpoint Shopping Center ("Dollar Tree").

4.     Defendant Big Lots Stores, Inc.'s store at 4433 Lemay Ferry Road, St. Louis, Missouri 63129, is located in the Southpoint Shopping Center ("Big Lots!").

5.     Venue is properly located in the Eastern District of Missouri because venue lies in the judicial district of the situs of the property.  The Defendants' properties and facilities are located in and do business within this judicial district.

6.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

7.     Defendants own, lease, lease to, or operate a place of public accommodation as defined by the ADA, 42 U.S.C. 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

8.     The Southpoint Shopping Center is a place of public accommodation.

9.     Dollar Tree is a place of public accommodation.

10.    Big Lots! is a place of public accommodation.

11.    Defendants are responsible for complying with the obligations of the ADA.

12.    Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

13.     Mr. Nekouee traveled to the St. Louis area every three to six months to accompany

his brother at heavy equipment auctions, or to visit heavy equipment dealerships, and now he travels to the St. Louis area every three to six month to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

14.     Fred Nekouee has visited the property which forms the basis of this lawsuit March 26, 2018 and on September 23, 2018, and he has definite plans to return to the property to avail himself of the goods and services offered to the public at the property in early 2019.

15.     Plaintiff Fred Nekouee has visited the St. Louis area near the Southpoint Shopping Center in June 2015; June 2016; September 2017; December 2017; March 2018; July 2018; and September 2018.

16.     Mr. Nekouee likes to shop at stores like Dollar Tree and Big Lots! to buy necessary items for himself while traveling or gifts for his family, and since they are both chain stores he knows generally what they offer for sale.   He would like to return to the Dollar Tree and Big Lots! in the Southpoint Shopping Center.

17.     Fred Nekouee has bought goods at the Dollar Tree, Big Lots! and McDonald's in the Southpoint Shopping Center March 26, 2018 and at the Dollar Tree and Big Lots! again on September 23, 2018.

18.     The Dollar Tree, Big Lots!, and McDonald's in the Southpoint Shopping Center and the Southpoint Shopping Center are close to the hotels he stays at in the area.

19.     The Plaintiff plans to return to the Southpoint Shopping Center on his upcoming visits to the St. Louis area since it is close to the heavy equipment dealerships he visits and to the hotels he stays at in the St. Louis area.

20.     The Plaintiff has encountered architectural barriers at the subject property.   The

barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restrooms at the Southpoint Shopping Center.

21.     After encountering barriers to access in the men's restroom in Big Lots!, the Plaintiff tried using the women's restroom in Big Lots!.

22.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

23.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

24.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair, and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

25.     On his visit to the Southpoint Shopping Center, the Plaintiff encountered excessively steep running slopes and cross slopes in its parking lot, access aisles, ramps and walking surfaces (sidewalks).

26.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property and places of public accommodation as described but not necessarily limited to the allegations in paragraph 32 of this Complaint.   Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

27.     The Plaintiff is deterred from visiting the Southpoint Shopping Center, Dollar Tree and Big Lots!, even though he enjoys their goods and services and even though they are close to the heavy equipment dealerships he visits and to the hotels he stays at in the St. Louis area, because

of the difficulties he will experience there until the property and places of public accommodation are made accessible to his in his wheelchair.

28.     Fred Nekouee desires to visit the Southpoint Shopping Center not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

29.     The Defendants have discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

30.     The Defendants have discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

31.     Preliminary inspections of the Southpoint Shopping Center have shown that violations of the ADA exist.

32.     The violations that Fred Nekouee personally encountered or observed include, but are not limited to:

**PARKING**

a.   In the parking lot, one of the two parking spaces for disabled patrons in front of Babies "R" Us does not have the signage and international symbol of accessibility.   This lack of signage violates Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.   The Plaintiff observed this lack of signage, and it made it difficult for him to locate an accessible parking space.

b.  In the parking lot, one of the three parking spaces for disabled patrons in front of Dollar Tree and Big Lots! Does not have the signage and international symbol of accessibility.  This lack of signage violates Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.  The Plaintiff observed this lack of signage, and it made it difficult for him to locate an accessible parking space.

c.   In the parking lot, there is no parking space for disabled patrons with van accessible signage in front of PetSmart.   This lack of signage violates Federal Law 2010, ADAAG §§ 208.2.4 an 502.6.   The Plaintiff observed this lack of van accessible signage.

d.   In the parking lot, there is no parking space for disabled patrons with van accessible signage in front of Cell Phone Repair and Rich & Charlie's Italian Restaurant. This lack of van accessible signage violates Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.  The Plaintiff observed this lack of van accessible signage.

e.   In the parking lot, there is no parking space for disabled patrons with van accessible signage in front of PetSmart and Babies "R" Us.  This lack of van accessible signage violates Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   The Plaintiff observed this lack of van accessible signage.

f.   In the parking lot, as shown in the photograph below, there is no parking space for disabled patrons with van accessible signage in front of Dollar Tree and Big Lots!. This lack of van accessible signage violates Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   The Plaintiff observed this lack of van accessible signage.



g.    In the parking lot, the parking space for disabled patrons in front of PetSmart, shown in the photograph below, has a running slope as steep as about 1:18.2 (5.5%).   This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting the Southpoint Shopping Center and this PetSmart.





h.   In the parking lot, the parking space for disabled patrons in front of PetSmart shown in the photograph below, has a running slope in portions of the space as steep as about 1:27.8 (3.6%).   This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting the Southpoint Shopping Center.



i.   In the parking lot, the parking space for disabled patrons in front of PetSmart and to the left of the space shown with the level tool in the photograph in subparagraph (h) above, has a running slope in its front portion as steep as about 1:25 (4%).   This running slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting the Southpoint Shopping Center.

j.   In the parking lot, the front portion of the parking space for disabled patrons in front of Cell Phone Repair and Rich & Charlie's Italian Restaurant shown in the photograph below has a running slope as steep as about 1:16.1 (6.2%) and a cross slope as steep as about 1:21.3 (4.7%).   These slopes are steeper than the maximum allowed slopes of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed these slopes, and they deter him from visiting Cell Phone Repair and dining at Rich &

Charlie's Italian Restaurant.



k.    In the parking lot, the running slope of the access aisle serving the disabled parking spaces in front of Rich & Charlie's Italian Restaurant is as steep as about 1:19.6 (5.1%), and the cross slope of this access aisle is as steep as about 1:30.3 (3.3%).   These slopes are steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed these conditions, and they deter him from visiting Rich & Charlie's Italian Restaurant.

l.    In the parking lot, one of the parking spaces for disabled patrons in front of PetSmart contains a change of level, has a running slope as steep as about 1:24.4 (4.1%), and a cross slope in the rear portion of such parking space (oriented as one parks facing in) as steep as about 1:18.9 (5.3%).   These slopes are steeper than the maximum allowed slope

of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed these conditions, and they deter him from visiting PetSmart and the Southpoint Shopping Center.

m.   In the parking lot, the parking space for disabled patrons shown in the photographs below in front of PetSmart, has a cross slope as steep as about 1:28.6 (3.5%). This slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting this PetSmart and the Southpoint Shopping Center.





n.    In the parking lot, the parking space for disabled patrons in front of Babies "R" Us and PetSmart is not even and has a running slope as steep as about 1:17.5 (5.7%).   This slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed these conditions, and they deter him from visiting the Southpoint Shopping Center.

o.    In the parking lot, the middle section of the access aisle in front of Cell Phone Repair has a cross slope as steep as about 1:16.7 (6%) and steeper than a slope of 1:48 (2%).   This slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting Cell Phone Repair and the Southpoint Shopping Center.

p.    In the parking lot, the rear portion of the parking space second from the right as shown in the photograph in subparagraph (f) above, in front of Dollar Tree and Big Lots,

has a running slope as steep as about 1:18.9 (5.3%), and a change of elevation in the front portion of this parking space (oriented as one parks facing in) of about 0.75 inches.   This slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4, and this change of elevation is greater than the maximum allowed change of level of 0.5 inches, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.   The Plaintiff encountered this slope and it made him unstable in his wheelchair. The Plaintiff observed this change in elevation in this parking space, and it deters him from visiting Dollar Tree, Big Lots!, and the Southpoint Shopping Center.

q.    In the parking lot, the front portion (towards the front of a car oriented as one parks facing in) of the parking space for disabled patrons in front of Dollar Tree and Big Lots! to the far left as shown in the photograph in subsection (f) above is uneven and has a cross slope as steep as about 1:31.3 (3.2%).   This slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from shopping at Dollar Tree and Big Lots!.

r.    In the parking lot, the rear portion (towards the rear of a car if one parks facing in) of the access aisle serving the disabled parking spaces in front of Dollar Tree and Big Lots! shown in the photograph in subparagraph (f) above has a running slope as steep as about 1:28.6 (3.5%), and the front portion of such access aisle has a cross slope as steep as about 1:31.2 (3.2%).   These slopes are steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered these slopes in this access aisle, and they made him unstable while moving in his wheelchair.

s.    The transition from the access aisles serving the parking spaces for disabled

patrons to the curb ramp leading to the accessible route in front of Dollar Tree contains a change of level of about 1.5 inches. This change of level is greater than the maximum allowed change of level of 0.5 inches, in violation of Federal Law 2010, ADAAG §§ 303.3 and 405.4. The Plaintiff encountered this condition, and he required assistance to move up this curb ramp in his wheelchair.

t.      The walking surface in front of Big Lots! is uneven with more than a 1.0 inch change in level and a running slope in such area as steep as about 1:7.6 (13.2%). This change of level and slope are in violation of Federal Law 2010, ADAAG §§ 502.4, 303.3 and 403.3. The Plaintiff encountered this change of level and slope while moving in his wheelchair, and it made him unstable in his wheelchair and blocked his forward movement. In his wheelchair, the Plaintiff required assistance to overcome these barriers to access.

u.      As shown in the photographs below, the slope of the accessibility curb ramp side or flare in front of Big Lots! is as steep as about 1:6.3 (16%) and steeper than a slope of 1:10 (10%). This slope is steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3. The Plaintiff encountered this curb ramp side, and it made him unstable while moving in his wheelchair.





v.   In the parking lot, the running slope of the access aisle serving the disabled parking spaces in front of Babies "R" Us and PetSmart shown in the photograph below is as steep as about 1:33.3 (3%), and the cross slope of this access aisle is a steep as about 1:13.7 (7.3%).   These slopes are steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed these conditions, and they deter him from visiting this Babies "R" Us and PetSmart.



w.    In the parking lot, the parking space for disabled patrons in front of Babies "R" Us and PetSmart shown in the photograph below has a cross slope as steep as about 1:20.4 (4.9%).   This slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting this Babies "R" Us and PetSmart.



16



x.     The running slope of the walking surface in front of Rich & Charlie's Italian Restaurant is as steep as about 1:14.9 (6.7%) and steeper than a slope of 1:20 (5%).   This slope is steeper than the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff observed this condition, and it deters him from dining at Rich & Charlie's Italian Restaurant.

y.     The top landing to the ramp in front of Rich & Charlie's Italian Restaurant has a slope as steep as about 1:9.8 (10.2%) and steeper than a slope of 1:48 (2%).   This landing has a slope steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 405.7.1.   The Plaintiff observed this condition, and it deters him from dining at Rich & Charlie's Italian Restaurant.

**ENTRANCE DOOR TO DOLLAR TREE**

z.     The force needed to open the entrance door to Dollar Tree is about 8 pounds and greater than 5 pounds.   The force needed to open the entrance door to Dollar Tree is greater than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   The Plaintiff required assistance to enter Dollar Tree due to the force necessary to open this entrance door.

**RESTROOM IN DOLLAR TREE**

aa.    As shown in the photograph below, the door area to the restroom in Dollar Tree does not have accessibility signage and the international symbol of accessibility.   This lack of signage violates Federal Law 2010, ADAAG § 703.7.2.1.   The Plaintiff observed this lack of signage.



bb.   In the restroom in Dollar Tree, the side wall grab bar only extends about 50 inches

from the rear wall and not at least 54 inches from the rear wall.   This side wall grab bar

does not extend a minimum of 54 inches (1370 mm) from the rear wall, in violation of

Federal Law 2010, ADAAG § 604.5.1.   The Plaintiff had difficulty using this grab bar to

transfer from his wheelchair to the toilet and back again due to this condition.

cc.   In the restroom in Dollar Tree, the toilet paper dispenser in the accessible toilet

compartment is loose, not installed properly, and its centerline is not between 7 inches and

9 inches of the front of the toilet. This toilet paper dispenser's centerline is not between a

minimum of 7 inches and a maximum of 9 inches from the front of the water closet or

toilet, in violation of Federal Law 2010, ADAAG § 604.7.   The Plaintiff could not reach

toilet paper from a normal sitting position on the toilet due to its location and improper

installation.

**ENTRANCE DOOR TO BIG LOTS!**

dd.   The force needed to open the entrance door to Big Lots! is about 6.5 pounds and greater than 5 pounds.   The force needed to open the entrance door to Big Lots! is greater than 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Due to the force required to open it, the Plaintiff had difficulty opening this door.

**MEN'S RESTROOM IN BIG LOTS!**

ee.   The force needed to open the entrance door to the men's restroom in Big Lots! is about 8 pounds and greater than 5 pounds.   The force needed to open the entrance door to the men's restroom in Big Lots! is greater than 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Due to the force required to open it, the Plaintiff required assistance to open this door.

ff.   In the men's restroom in Big Lots!, the accessible toilet compartment door pull is not provided on both sides of the door near the latch.   This condition violates Federal Law 2010, ADAAG § 604.8.1.2.   The Plaintiff encountered this condition.

gg.   In the men's restroom in Big Lots!, the side wall grab bar only extends about 44 inches from the rear wall and less than 54 inches from the rear wall.   This side wall grab bar does not extend the minimum required distance of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   The Plaintiff had difficulty transferring himself from his wheelchair to the toilet and back again due to the position of this grab bar.

hh.   In the men's restroom in Big Lots!, the urinal rim is about 22 inches above the floor and higher than 17 inches above the floor.   This urinal rim is higher than a maximum of 17 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 605.2. The Plaintiff observed this condition.

ii.   In the men's restroom in Big Lots!, the control for the lavatory faucet requires tight grasping, pinching, or twisting of the wrist.   This condition violates Federal Law 2010, ADAAG §§ 606.4 and 309.4.   The Plaintiff required assistance to turn the water on and off to this sink due to this condition.   He could not turn the water on and off to this sink with a closed fist or loose grip.

jj.   In the men's restroom in Big Lots!, the centerline of the toilet paper dispenser in the accessible toilet compartment is not between 7 inches and 9 inches from the front of the toilet.   This condition violates Federal Law 2010, ADAAG § 604.7.   The Plaintiff could not reach the toilet paper from a normal sitting position on the toilet due to the location of the toilet paper dispenser.

kk.   In the men's restroom in Big Lots!, the bottom edge of the mirror's reflecting surface is about 44 inches above the floor and higher than 40 inches above the floor.   The bottom edge of this mirror's reflecting surface is higher than the maximum allowed height of 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3. Due to its height above the finish floor, the Plaintiff could not see his full face in this mirror while sitting in his wheelchair.

ll.   In the men's restroom in Big Lots!, the coat hook in the accessible toilet compartment is about 67 inches above the floor and higher than 48 inches above the floor. This hook is higher than the maximum reach height of 48 inches above the finish floor, in

violation of Federal Law 2010, ADAAG § 603.4.   The Plaintiff observed this condition.

mm.      In the men's restroom in Big Lots!, the clear floor space of 30 by 48 inches for lavatory and paper towel dispenser use is blocked by a trash can.   Clear floor space for a forward or parallel approach to this lavatory and paper towel dispenser is not provided, in violation of Federal Law 2010, ADAAG §§ 305.7 and 606.2.   The Plaintiff encountered this condition.

**WOMEN'S RESTROOM IN BIG LOTS!**

nn.   The force need to open the entrance door to the women's restroom in Big Lots! is about 8 pounds and greater than 5 pounds.   The force needed to open the entrance door to the women's restroom in Big Lots! is greater than 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Due to the force required to open it, the Plaintiff had difficulty opening this door.

oo.   In the women's restroom in Big Lots!, a door pull is not provided on both sides of the door near the latch for the accessible toilet compartment.   This condition violates Federal Law 2010, ADAAG § 604.8.1.2.   The Plaintiff encountered this condition.

pp.   In the women's restroom in Big Lots!, the rear wall grab bar only extends about 16 inches and 20 inches from the centerline of the water closet or toilet.   This rear wall grab bar does not extend a minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side of the centerline of the water closet, in violation of Federal Law 2010, ADAAG § 604.5.2.   Due to its location, the Plaintiff had difficulty using this rear wall grab bar to transfer himself from his wheelchair to the toilet.

qq.   In the women's restroom in Big Lots!, the side wall grab bar only extends about

46 inches from the rear wall and not at least 54 inches from the rear wall.   This side wall grab bar does not extend the minimum of 54 inches (1370 mm) from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   Due to its position, the Plaintiff had difficulty using this side wall grab bar to transfer from his wheelchair to the toilet and back again.

rr.   In the women's restroom in Big Lots!, as shown in the photograph below, the lavatory pipes under the sink are not insulated.   This lack of insulation violates Federal Law 2010, ADAAG §§ 606.3 and 606.5.   In his wheelchair, the Plaintiff used this sink to wash his hands, and he risked skin burns and injury to his legs due to the lack of such insulation.



ss.   In the women's restroom in Big Lots!, the control for the lavatory faucet requires tight grasping, pinching, or twisting of the wrist.   This condition violates Federal Law 2010, ADAAG §§ 606.4 and 309.4.   Due to this condition, the Plaintiff required assistance

to turn the water on and off to the sink.

tt.    In the women's restroom in Big Lots!, the centerline of toilet paper dispenser in the accessible toilet compartment is not between 7 and 9 inches from the front of the toilet.   The centerline of this toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet or toilet, in violation of Federal Law 2010, ADAAG § 604.7.   Due to the location of this toilet paper dispenser, the Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.

uu.    In the women's restroom in Big Lots!, the bottom edge of the mirror's reflecting surface is about 44 inches above the floor and higher than 40 inches above the floor.   The bottom edge of this mirror's reflecting surface is higher than the maximum allowed height of 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3. Due to its height above the floor, the Plaintiff could not see his full face in this mirror from his wheelchair.

vv.   In the women's restroom in Big Lots!, the toilet in the accessible toilet compartment does not have the flush control mounted on the open and wide side of the clear floor space.   This condition violates Federal Law 2010, ADAAG § 604.6.   Due to the location of this flush control, the Plaintiff required assistance to flush this toilet.

ww.    In the women's restroom in Big Lots!, the coat hook in the accessible toilet compartment is about 66 inches above the floor and higher than 48 inches above the floor. This coat hook is outside the reach range on an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   The Plaintiff observed this condition.

**RESTROOMS IN MCDONALD'S**

xx.    The force need to open the entrance door to the men's restroom in McDonald's

24

is about 8.5 pounds and greater than 5 pounds.   The force needed to open the entrance door to the men's restroom in McDonald's is greater than 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Due to the force required to open it, the Plaintiff had difficulty opening this door.

yy.   As shown in the photograph below, the men's restroom in McDonald's does not have the signage and international symbol of accessibility.   This lack of signage and symbol of accessibility violates Federal Law 2010, ADAAG § 703.7.2.1.   The Plaintiff observed this lack of signage and the symbol.



zz.   The women's restroom in McDonald's does not have the signage and international symbol of accessibility.   This lack of signage and symbol of accessibility

violates Federal Law 2010, ADAAG § 703.7.2.1.  The Plaintiff observed this lack of signage and the symbol.

33.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

34.     The discriminatory violations described in paragraph 32 are not an exclusive list of the Defendants' ADA violations.  Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' places of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

35.   The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' buildings and their facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.  The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

36.     Defendants have discriminated against the individual by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.  Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford

all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

37.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

38.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

39.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

40.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff

or waived by the Defendants.

41.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendants to alter the Southpoint Shopping Center, Dollar Tree, Big Lots!, and adjacent parking lot spaces and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests from the Court:

a.     A Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.     An award of attorney's fees, costs and litigation expenses pursuant to 42

U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

      d.     Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

                    Respectfully submitted,

                    s/Robert J. Vincze_____
                    Robert J. Vincze (MO #37687)
                    Law Offices of Robert J. Vincze
                    PO Box 792
                    Andover, Kansas 67002
                    Phone: 303-204-8207
                    Email: vinczelaw@att.net

                    *Attorney for Plaintiff Fred Nekouee*